**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MAKEL BARNES, <br> United States Penitentiary Canaan <br> 3057 Eric J. Williams <br> Memorial Drive <br> Waymart, PA  18472, and <br><br> DARIUS MCNEAL, <br> Federal Correctional Institute Pollock <br> 1000 Airbase Road <br> Pollock, LA  71467, <br><br> on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE DISTRICT OF COLUMBIA, <br> a municipal corporation <br> 1350 Pennsylvania Avenue, NW <br> Washington, DC 20004, and <br><br> FEDERAL BUREAU OF PRISONS, <br> 320 First Street, NW <br> Washington, DC 20534 <br><br> Defendants. | Civil Action No. 24-cv-00750-RCL |

**FIRST AMENDED CLASS ACTION COMPLAINT FOR**
**DECLARATORY, INJUNCTIVE, AND OTHER RELIEF**

**INTRODUCTION**

1.      This is a case about the District of Columbia's ongoing failure to provide students with disabilities who are incarcerated in the Federal Bureau of Prisons (BOP) with a free appropriate public education (FAPE) pursuant to the Individuals with Disabilities Education Act (IDEA), or, indeed, with any education at all.

2.      Plaintiffs Darius McNeal and Makel Barnes are lifetime District residents who,

since being incarcerated in the BOP, have been denied access to special education and related services and a high school diploma program. They have not been enrolled in a high school education program since entering the BOP. They bring this lawsuit on behalf of themselves and other similarly situated students.

3.      Plaintiffs and similarly situated students are members of a vulnerable student population. They are placed in BOP facilities throughout the country, often far from their home, family, and community in the District. These detained students must grapple with the challenges caused by their disabilities while being left to languish without the benefit of their education and related services to which they are entitled. Because of Defendants' failure to provide them with an education, they have not made any academic progress nor earned any credits toward a high school diploma. When Plaintiffs and similarly situated students return to the District, they will have lost years of academic instruction, and most will no longer be eligible for special education, having aged out of eligibility while languishing in the BOP.

4.      Providing educational opportunities to incarcerated young people is proven to reduce recidivism and correlates with higher employment rates.[1] Educational access while incarcerated leads to later improvements in public safety and a greater likelihood of the formerly incarcerated person contributing to their community.

5.      Plaintiffs and similarly situated students would be receiving special education and related services if they were incarcerated in the District. However, the District does not maintain a state prison for individuals who are sentenced pursuant to a felony violation of the D.C. Criminal

---

[1] U.S. Dep't of Education, *U.S. Department of Education Announces Expansion of Second Chance Pell Experiment and Actions to Help Incarcerated Individuals Resume Educational Journeys and Reduce Recidivism* (Apr. 26, 2022), *available at* https://www.ed.gov/news/press-releases/us-department-education-announces-expansion-second-chance-pell-program-and-actions-help-incarcerated-individuals-resume-educational-journeys-and-reduce-recidivism.

Code. Instead, pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 (Revitalization Act), the District relies on the BOP to satisfy its prison needs. Pub. L. 105-33, § 11201(b), 111 Stat. 712 (1997). Since October 1, 2001, all individuals serving a period of incarceration resulting from a conviction of a felony violation of the D.C. Code serve their sentence within a BOP facility.[2] *See* D.C. Code § 24-101(a)-(b). These individuals are referred to as "D.C. Code offenders."

6.      DC Code offenders, including Plaintiffs and similarly situated District students, are eligible for special education pursuant to the IDEA, federal implementing regulations, and District law until the end of the school year in which they turn 22. *See* 20 U.S.C. § 1400, *et seq.*; 34 C.F.R. § 300, *et seq.*; D.C. Mun. Regs. tit. 5-A, § 3000, *et seq.* They have Individualized Education Programs (IEPs), which are comprehensive plans tailored to the student's educational needs. IEPs include, among other things, the amount of specialized instruction and related services that each student needs to ensure that the student can make meaningful progress towards his or her educational goals and access the general curriculum.

7.      Despite these laws, Plaintiffs Makel Barnes and Darius McNeal have not received any special education or related services in accordance with their IEPs since they were transferred to the BOP on or about January 2019 and September 2021, respectively. Their education was effectively halted during their high school years.

8.      Additionally, all similarly situated DC Code offenders incarcerated in the BOP have not received any special education or related services in accordance with their IEPs since

---

[2] An individual who is convicted of a felony violation of the D.C. Code in the Superior Court of the District of Columbia (the local court for the District of Columbia) may be sentenced by a judge of that court to a term of incarceration pursuant to the D.C. Code. Adults who are sentenced to a term of incarceration for a felony violation of the D.C. Code are transferred to the custody of BOP and placed in a BOP facility to serve their sentence.

they were transferred to the BOP.

9.     Defendants have systemically and egregiously deprived FAPE to every IDEA-eligible District student serving a sentence in the BOP since 2001, for over two decades.

10.    These violations have continued despite a decision from this Court establishing that the District has an obligation under the IDEA to provide FAPE to these students. *See Brown v. District of Columbia*, 324 F. Supp. 3d 154 (D.D.C. 2018).[3]

11.    The BOP compounds the problem faced by Plaintiffs and similarly situated students by denying, without due process, access to special education and related services to which they are entitled under federal and District law. The BOP does this without providing Plaintiffs and similarly situated students any notice or opportunity to be heard.

12.    On February 21, 2023, Plaintiffs each filed administrative due process complaints individually and on behalf of all similarly situated students, alleging that the District deprived them and all similarly situated District students of FAPE.

13.    On December 15, 2023, the Hearing Officer found the District liable for depriving Plaintiffs of FAPE and ordered evaluations and compensatory education. The Hearing Officer denied Plaintiffs' requested relief to order the District to provide FAPE to D.C. Code offenders, and to extend Plaintiffs' eligibility for special education. The Hearing Officer also dismissed

---

[3] In the *Brown* case, the District Court and magistrate judge issued four separate opinions:  (1) *Brown I*, the initial report and recommendations, *Brown v. District of Columbia*, Civil Action No. 1:17-cv-00348, 2018 U.S. Dist. LEXIS 24300 (D.D.C. Jan. 24, 2018); (2) *Brown II,* the Court's opinion adopting in part and modifying in part the R&R, *Brown v. District of Columbia*, 324 F. Supp. 3d 154 (D.D.C. 2018); (3) *Brown III*, the Court's opinion denying the District's motion for reconsideration of *Brown II*, *Brown v. District of Columbia*, Civil Action No. 17-348, 2019 U.S. Dist. LEXIS 72755 (D.D.C. Apr. 30, 2019); and (4) *Brown IV*, the magistrate judge's report and recommendation to deny the District's motion for summary judgment, and grant Brown's cross-motion for summary judgment on the liability of the District for failure to provide FAPE to Brown, *Brown v. District of Columbia*, Civil Action No. 1:17-cv-00348, 2019 U.S. Dist. LEXIS 130692 (D.D.C. Jul. 8, 2019).

Plaintiffs' systemic claims for lack of jurisdiction.

14.     The Hearing Officer Determinations (HODs), attached as Exhibits A (Barnes HOD) and B (McNeal HOD), reinforce the *Brown* decision of this court, holding that the District violates the IDEA by failing to provide FAPE to the Plaintiffs. Despite the District's arguments to the contrary, the Hearing Officer agreed with the rationale of the *Brown* court and concluded that the District must provide FAPE to the Plaintiffs.

15.     Defendants are failing to implement policies, procedures, and practices to provide or otherwise ensure that Plaintiffs receive the special education and related services to which they are entitled pursuant to the IDEA and District law. Without this Court's intervention, Plaintiffs and similarly situated students will continue languishing without education and the critical support they are legally entitled to receive.

16.     Named Plaintiffs Makel Barnes and Darius McNeal bring this action for declaratory, injunctive, and other equitable relief against the District, on behalf of themselves and others similarly situated, to challenge this systemic failure to comply with the IDEA, 20 U.S.C. § 1400, *et seq*., and its federal and local regulations, 34 C.F.R. § 300, *et seq*., D.C. Mun. Regs. tit. 5-A, § 3001, *et seq*.

17.     Plaintiffs seek declaratory judgment that, since 2018, the District has failed to provide or otherwise ensure FAPE to D.C. Code offenders, violating the IDEA, its federal implementing regulations, and District laws, and that BOP violates the Due Process Clause of the Fifth Amendment by denying Plaintiffs access to their special education.

18.     Plaintiffs also seek a permanent injunction requiring Defendants to provide or otherwise ensure the provision of FAPE to Plaintiffs and similarly situated students and to provide Plaintiffs and similarly situated students with compensatory education, and other relief described

below.

## JURISDICTION AND VENUE

19.     This action is brought under the IDEA, 20 U.S.C. § 1400 and the Fifth Amendment
to the U.S. Constitution.

20.     The Court has subject matter jurisdiction over the IDEA claims under 20 U.S.C. §§
1331 and 1334 and 20 U.S.C. § 1415(i)(2) because Plaintiffs are aggrieved by the findings and
decisions of the Hearing Officer.

21.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this
action presents federal questions and seeks to redress the deprivation of rights under the Fifth
Amendment to the U.S. Constitution.

22.     This Court has the authority to grant declaratory and injunctive relief under
28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57 and 65.

23.     Venue is proper under 28 U.S.C. § 1391.

## PARTIES

### Plaintiffs

24.     Plaintiff Makel Barnes is a 22-year-old District resident with a disability. He is
eligible for special education and related services under the IDEA as a student with an "Other
Health Impairment" as defined in 34 C.F.R. § 300.8(c)(9). Makel has exhausted his administrative
remedies under the IDEA. Makel is currently serving a sentence of incarceration as a DC Code
offender at the United States Penitentiary Canaan (USP Canaan), a BOP facility.

25.     Plaintiff Darius McNeal is a 23-year-old District resident with a disability. He was
eligible for special education and related services under the IDEA as a student with "multiple
disabilities" as defined in 34 C.F.R. § 300.8(c)(7) until June 2023, which is the end of the school
year in which he turned 22. Darius has exhausted his administrative remedies under the IDEA.

6

Darius is currently serving a sentence of incarceration as a DC Code offender at the Federal Correctional Institution Pollock (FCI Pollock), a BOP facility.

**Defendants**

26.     Defendant District of Columbia is a "state" within the meaning of the IDEA. 20 U.S.C. § 1401(31). The District receives federal funds under the IDEA and must, therefore, comply with the IDEA requirements. 20 U.S.C. § 1412(a); 34 C.F.R. § 300.2. Through its designated geographic Local Educational Agency (LEA), District of Columbia Public Schools (DCPS), the District must make FAPE available for all students with disabilities who are residents of the District aged three (3) through the end of the school year in which they turn age twenty-two (22). D.C. Mun. Regs. tit. 5-A, § 3001.4. Through its designated State Educational Agency (SEA), Office of the State Superintendent of Education (OSSE), the District must ensure FAPE is available to all children with disabilities residing in the District aged three (3) through the end of the school year in which they turn age twenty-two (22). 20 U.S.C. § 1412(a)(11); 34 C.F.R. §§ 300.149, 300.600; D.C. Mun. Regs. tit. 5-A, § 3001. Through the Department of Corrections (DOC), the designated public agency responsible for providing FAPE to IDEA-eligible students incarcerated at its facility, the District provides FAPE to eligible students who are pre-trial detainees, those sentenced to misdemeanor convictions of the D.C. Code, and those sentenced to felony convictions of the D.C. Code before they are transferred to the BOP facility where they will serve their term of incarceration. D.C. Code § 24-101(a)-(b), § 24-211, *et seq.* DOC provides IDEA-eligible students with access to FAPE through the Maya Angelou Public Charter School at the DC Jail. The District has entered into both a financial contract and a Memorandum of Agreement (MOA) governing the relationship with the school, DOC, and OSSE.

27.     Defendant Federal Bureau of Prisons (BOP) is the federal agency responsible for

housing District residents sentenced to a term of incarceration for felony violations of the D.C. Code.  D.C. Code § 24-101(a)-(b).  BOP is responsible for designating DC Code offenders convicted of felony violations to the location for which they will serve their sentence, https://www.bop.gov/policy/progstat/5100_008cn.pdf.  The BOP is also responsible for determining "the prisoner's programmatic needs" of DC Code offenders, https://www.bop.gov/policy/progstat/5100_008cn.pdf.

## CLASS ACTION ALLEGATIONS

28.    Named Plaintiffs Makel Barnes and Darius McNeal bring this action on behalf of themselves and all other similarly situated students. As of the filing of this complaint, the Plaintiff class consists of all District residents between the ages of eighteen (18) and twenty-four (24) who: (1) are incarcerated in the BOP as DC Code offenders and are currently entitled to receive special education and/or related services pursuant to the IDEA and its federal and local implementing regulations and District law; (2) are or were incarcerated in the BOP as DC Code offenders and were entitled to receive special education and/or related services pursuant to the IDEA and its federal and local implementing regulations and District law, but have since aged out of eligibility; or (3) will be incarcerated in the BOP as DC Code offenders and are entitled to receive special education and/or related services pursuant to the IDEA and its federal and local implementing regulations and District law, and do not, did not, or will not, receive special education and/or related services pursuant to the IDEA and its federal and local implementing regulations and District law while incarcerated in the BOP.

29.    The requirements of Rules 23(a)(1)-(4), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure are met as to the class for the following reasons:

a.    The class is so numerous that the joinder of all members of the class is impracticable. This is a highly mobile group such that a class action is

appropriate. Plaintiffs estimate there are approximately 40-60 students currently incarcerated as D.C. Code offenders who are entitled to receive special education and/or related services pursuant to the IDEA and its federal and local implementing regulations and District law and are not receiving FAPE. In addition, there is an unknown number of future class members, as more students are sentenced and transferred to the BOP on an ongoing basis. There are approximately 20-30 students who are or recently were incarcerated as DC Code offenders who were entitled to receive special education and/or related services pursuant to the IDEA and its federal and local implementing regulations and District law who did not receive FAPE and are no longer eligible.

b.  There are questions of law and fact common to the class, namely whether Defendant District of Columbia has systemically deprived FAPE to IDEA-eligible District students incarcerated as DC Code offenders in the BOP, where Defendant District of Columbia is, as a policy and/or practice, failing to implement the students' IEPs by failing to provide special education and/or related services and access to high school education programming; and whether Defendant BOP has violated Plaintiffs' Fifth Amendment rights to due process of IDEA-eligible District students incarcerated as DC Code offenders in the BOP by systemically denying FAPE to these students without notice of the deprivation and an opportunity to be heard.

c.  The claims of the named Plaintiffs are typical of the claims of the class in that each of the named Plaintiffs is a D.C. Code offender who has an IEP

that requires specialized instruction and/or related services but has not received special education and/or related services in accordance with their IEPs while incarcerated in the BOP.

d.    The named Plaintiffs will fairly and adequately represent and protect the interests of the class. They have no conflicting interests to the class and seek relief to benefit all class members.

e.    Defendants have acted and continue to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

f.    The common facts and questions of law shared by the class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

g.    Plaintiffs' counsel has significant experience with federal civil rights litigation and class actions and will zealously litigate the interests of the class.

## STATUTORY BACKGROUND

30.    In 1975, Congress enacted the Education for All Handicapped Children Act, now known as the Individuals with Disabilities Education Act (IDEA), "to ensure that the rights of children with disabilities . . . are protected." 20 U.S.C. § 1400(d)(1)(B).

31.    The IDEA's primary mandate is the guarantee that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

32.     The IDEA is a federal grant program administered by the U.S. Department of Education. 20 U.S.C. § 1400, *et seq.* Under the IDEA, the Secretary of Education provides funding to States and certain other entities for providing special education and related services. 20 U.S.C. § 1411(a)(1). A State becomes eligible for this funding by submitting to the Secretary a plan showing that it "has in effect" certain "policies and procedures" to fulfill the statute's aims. 20 U.S.C. § 1412(a). A State that accepts this funding must comply with the mandates contained in the IDEA and its implementing regulations. 34 C.F.R. § 300.2. The District is a "State" for the purposes of the IDEA. 20 U.S.C. § 1401(31).

33.     Pursuant to the IDEA, a State receiving funding must provide "a free appropriate public education to all children with disabilities residing in the State between the ages of 3 and 21." 20 U.S.C. § 1412(a)(1)(A). District regulations extend this provision to students through the end of the school year in which they turn 22 years old. 5-A D.C.M.R. § 3001.4.

34.     A State, including the District, is responsible for ensuring that all students with disabilities in the District receive FAPE in accordance with the IDEA. *See* 34 C.F.R. § 300.600. "[A] State must ensure that when it identifies noncompliance with the requirements … by LEAs, the noncompliance is corrected as soon as possible…." *Id.*

35.     The IDEA expressly applies "to all political subdivisions of the State that are involved in the education of children with disabilities, including … [t]he State educational agency (SEA) … [l]ocal educational agencies (LEAs) … [and] State and local juvenile and adult correctional facilities…." 34 C.F.R. § 300.2(b)(1)(i), (ii), (iv).

36.     The SEA is responsible for ensuring that the requirements of the IDEA are met. 20 U.S.C. § 1412(a)(11)-(12); 34 C.F.R. § 300.149. If the SEA determines that the LEA "is unable to establish and maintain programs of free appropriate public education that meet the requirements

of [the IDEA]," then the SEA must provide "special education and related services directly to children with disabilities residing in the area served by that local educational agency, or for whom that State agency is responsible." 20 U.S.C. § 1413(g)(1)(B).

37.     Each LEA is responsible for making FAPE available for all children with disabilities. 20 U.S.C. § 1413(a)(1). School districts must develop a comprehensive plan, known as an Individualized Education Program (IEP), for meeting the special education needs of each student with a disability. *See* 20 U.S.C. § 1414(d)(2)(A). As defined by the IDEA, the duty to provide FAPE means the provision of "special education and related services" that, in relevant part, "are provided in conformity with the [IEP] required[.]" 20 U.S.C. § 1401(9)(D).

38.     A student's IEP is developed by the student's IEP team, a multidisciplinary group consisting of the student's parents, teachers, and other qualified educational professionals. *See* 20 U.S.C. § 1414(d)(1)(B). The IDEA requires IEPs to include a written statement of evaluation and plan of action that sets forth the student's present functional/educational performance, measurable annual goals, how the goals will be measured, including benchmarks or short-term objectives, and "the special education and related services and supplementary aids and services … to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child." 20 U.S.C. § 1414(d)(1)(A)(i).

39.     The "related services" contained in an IEP include "such developmental, corrective, and other supportive services … as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26)(A). For example, in the case of a child whose behavior impedes his or her learning or that of others, the IEP may include "positive behavioral interventions and supports, and other strategies, to address that behavior[.]" 20 U.S.C. § 1414(d)(3)(B)(i).

40.     The LEA must implement an IEP "as soon as possible," 34 C.F.R. § 300.323(c)(2), 5-A D.C.M.R. § 3020, and must propose an appropriate placement for the student that can provide the special education and related services listed in the IEP. *See* 34 C.F.R. § 300.350(a); 5-A D.C.M.R. § 3022.

41.     The LEA must develop and implement interagency agreements with other state and local agencies that provide or pay for services required by the IDEA for students with disabilities. 34 C.F.R. §§ 300.103(a), 300.154(a).

42.     In 1997, the United States Congress enacted the National Capital Revitalization and Self-Government Improvement Act of 1997 (the "Revitalization Act"). The Revitalization Act states:

> [T]he felony population sentenced pursuant to the District of Columbia Code residing at the Lorton Correctional Complex shall be transferred to a penal or correctional facility operated or contracted for by the Bureau of Prisons. Such persons shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed, and the Bureau of Prisons shall be responsible for the custody, care, subsistence, education, treatment and training of such persons.

Pub. L. 105-33, § 11201(b), 111 Stat. 712 (1997).

## FACTUAL BACKGROUND

### Makel Barnes

43.     Plaintiff Makel Barnes is a 22-year-old District resident who is eligible for special education and related services as a student with a disability under the IDEA.

44.     Makel wants to receive special education and related services while incarcerated in the BOP so that he can pursue his high school diploma in preparation for obtaining a job when he returns to the community. Without a high school diploma, Makel's ability to secure sustained employment upon returning to the community will be significantly limited, which places Makel at greater risk for recidivism.

45.     Makel is classified as a student with "Other Health Impairment." 34 C.F.R. § 300.8(a)(1).

46.     Makel's most recent special education evaluation was on March 25, 2021. 20 U.S.C. § 1414(a)-(c); 5-A D.C.M.R. §§ 3004-3007.

47.     Makel's most recent eligibility determination was on April 20, 2021. 20 U.S.C. § 1414 (b)(4); 5-A D.C.M.R. § 3010.

48.     Prior to Makel's incarceration in the BOP, he received special education and related services at DCPS Youth Services Center, which is the District's pre-trial detention facility for youth.

49.     Makel has 19.5 credits towards the required 24 credits, known as Carnegie Units, needed to earn his DCPS high school diploma.

50.     Makel's most recent IEP, from DCPS Youth Services Center on April 20, 2021, and amended on June 3, 2021, calls for 15 hours per week of specialized instruction in a General Education setting and 120 minutes per week of Behavioral Support Services and Transition Services for post-secondary education and training, employment and independent living. This IEP was reasonably calculated to place him on a path to earn his high school diploma.

51.     On August 23, 2021, the Superior Court for the District of Columbia sentenced Makel to a term of incarceration for a felony violation of the D.C. Code.

52.     Because felony violations of the D.C. Code are served in the BOP pursuant to the Revitalization Act, Makel has been incarcerated in the BOP since on or about September 2021.

53.     Makel was first housed at Federal Correctional Institute Cumberland (FCI Cumberland), and he is currently housed at USP Canaan.

54.     FCI Cumberland does not offer a credit-bearing high school diploma program or

provide special education and related services pursuant to the IDEA.

55.     USP Canaan does not offer a credit-bearing high school diploma program or provide special education and related services pursuant to the IDEA.

56.     Makel has not received any general education or special education and related services, nor has he been enrolled in a high school diploma program since entering BOP custody on or about September 2021.

57.     Defendant District of Columbia has not provided Makel with any special education and related services in accordance with his IEP since entering BOP custody on or about September 2021.

58.     Defendant District of Columbia has not held an IEP meeting with Makel, nor have they updated his IEP pursuant to 20 U.S.C. § 1414(d); 5-A D.C.M.R. § 3008 since June 3, 2021.

59.     Defendant District of Columbia has not evaluated Makel in any areas of disability pursuant to 20 U.S.C. § 1414(a)-(c) since March 25, 2021.

60.     Defendant District of Columbia has not provided Makel with any compensatory education for the period of time he has been denied special education and related services in accordance with his IEP.

61.     When Makel was transferred to BOP custody, BOP did not provide Makel with notice or an opportunity to be heard before denying Makel access to a FAPE.

62.     As a result, Makel has been deprived of FAPE, has been delayed in achieving his high school diploma, and has been prevented from making any educational progress.

63.     On February 21, 2023, Makel filed an administrative due process complaint individually and on behalf of all IDEA-eligible DC students incarcerated as DC Code offenders in the BOP, alleging that the District deprived him, and all similarly situated DC students, of FAPE.

64.     In his administrative due process complaint, Makel alleged that DCPS failed to provide any special education and related services since entering BOP custody, and thus, denied him FAPE. Makel also alleged that OSSE failed to supervise and monitor the provision of FAPE, and therefore, OSSE's failure to ensure he received FAPE amounts to a denial of FAPE. Lastly, Makel alleged that OSSE failed to intervene to provide FAPE directly when DCPS failed to do so, and OSSE's failure to intervene denied Makel FAPE.

65.     On December 15, 2023, the Hearing Officer issued his HOD, in which he relied heavily on this court's decision in *Brown*, and found and held, *inter alia*, that: (1) pursuant to the IDEA, Makel was indeed entitled to receive special education and related services while incarcerated in the BOP, (2) Makel has not been enrolled in any high school program, has not had any IEP meetings, and has not received any special education or related services since he entered the BOP, (3) DCPS was the LEA responsible for providing FAPE and they have denied Makel of FAPE, and (4) OSSE as the SEA was responsible for directly providing FAPE when DCPS was unable and unwilling to do so, and therefore, denied Makel FAPE. Ex. A (Barnes HOD).

66.     The Hearing Officer ordered compensatory education to remedy Makel's complete denial of FAPE.

67.     The Hearing Officer denied Makel's systemic claims for violations of the IDEA on behalf of all similarly situated IDEA-eligible DC students incarcerated in BOP after concluding that he did not have jurisdiction to resolve systemic claims at an administrative due process hearing on an individual due process complaint.

68.     As of the date of the filing of this Complaint, Makel has not received access to a high school diploma program, special education and related services, or any compensatory education following the HOD. He continues to suffer irreparable educational, psychosocial,

16

emotional, and personal harm from this ongoing deprivation of his education.

**Darius McNeal**

69.     Plaintiff Darius McNeal is a 23-year-old District resident who was eligible for special education and related services as a student with a disability under the IDEA until June 2023, which is the end of the school year in which he turned 22.

70.     Darius wants to receive compensatory education to further his educational goals of earning a GED in preparation for obtaining a job when he returns to the community. Without a high school diploma, or the opportunity to learn the educational skills to earn a high school equivalency, Darius's ability to secure sustained employment upon returning to the community will be significantly limited, which places Darius at greater risk for recidivism.

71.     Darius is classified as a student with multiple disabilities, including "Specific Learning Disability" and "Other Health Impairment." 34 C.F.R. § 300.8(a)(1).

72.     Darius's most recent special education evaluation pursuant to 20 U.S.C. § 1414(a)-(c) and 5-A D.C.M.R. §§3004-3007 was on October 10, 2018.

73.     Darius's most recent eligibility determination pursuant to 20 U.S.C. § 1414 (b)(4) and 5-A D.C.M.R. § 3010 was on December 5, 2018.

74.     Prior to Darius's incarceration in the BOP, he was receiving special education and related services from Maya Angelou Academy (Maya) at New Beginnings Youth Development Center, which is the District's long-term incarceration facility for youth.

75.     Darius has at least 15 credits towards the required 24 credits, known as Carnegie Units, needed to earn his DCPS high school diploma.

76.     Darius's most recent IEP, developed by Maya on December 5, 2018, required 20 hours per week of specialized instruction in a General Education setting and 30 minutes per week of Behavioral Support Services and was reasonably calculated to place him on a path to earn his

high school diploma.

77.     On December 14, 2018, the Superior Court for the District of Columbia sentenced Darius to a term of incarceration for a felony violation of the D.C. Code.

78.     Because felony violations of the D.C. Code are served in the BOP pursuant to the Revitalization Act, Darius has been incarcerated in the BOP since on or about January 2019.

79.     Darius was first housed at Federal Correctional Institute Gilmore (FCI Gilmore), and he is currently housed at FCI Pollock.

80.     FCI Gilmore did not offer a credit-bearing high school diploma program or provide special education and related services pursuant to the IDEA.

81.     FCI Pollock does not offer a credit-bearing high school diploma program or provide special education and related services pursuant to the IDEA.

82.     Darius has not received any general education or special education and related services, nor has he been enrolled in a high school diploma program since entering BOP custody on or about January 2019.

83.     Defendant District of Columbia has not provided Darius with any special education and related services in accordance with his IEP since entering BOP custody on or about January 2019.

84.     Defendant District of Columbia has not held an IEP meeting pursuant to 20 U.S.C. § 1414(d) and 5-A D.C.M.R. § 3008, nor have they updated Darius' IEP since December 5, 2018.

85.     Defendant District of Columbia has not evaluated Darius in all areas of disability pursuant to 20 U.S.C. § 1414(a)-(c) since October 10, 2018.

86.     Defendant District of Columbia has not provided Darius with any compensatory education for the period of time he has been denied special education and related services in

accordance with his IEP.

87.     When Darius was transferred to BOP custody, BOP did not provide Darius with notice or an opportunity to be heard before denying him access to a FAPE.

88.     As a result, Darius has been deprived of FAPE, delayed in achieving his high school diploma, and prevented from making any educational progress.

89.     Due to this deprivation of FAPE, Darius has now aged out of eligibility for IDEA services without having the opportunity to achieve his educational goal of obtaining a high school diploma.

90.     On February 21, 2023, Darius filed an administrative due process complaint individually and on behalf of all IDEA-eligible DC students incarcerated as DC Code offenders in the BOP, alleging that the District deprived him and all similarly situated DC students of FAPE.

91.     In his administrative due process complaint, Darius alleged that DCPS failed to provide any special education and related services since entering BOP custody, and thus, denied him FAPE.  He also alleged that OSSE failed to supervise and monitor the provision of FAPE, and therefore, OSSE's failure to ensure he received FAPE amounted to a denial of FAPE.  Lastly, he alleged that OSSE failed to intervene to provide FAPE directly when DCPS failed to do so, and that OSSE's failure to intervene denied Darius FAPE.

92.     On December 15, 2023, the Hearing Officer issued his HOD, in which he relied heavily on this Court's decision in *Brown*, and found and held, *inter alia*, that: (1) pursuant to the IDEA, Darius was indeed entitled to receive special education and related services while incarcerated in the BOP, (2) Darius has not been enrolled in any high school program, has not had any IEP meetings, and has not received any special education or related services since he entered the BOP, (3) DCPS was the LEA responsible for providing FAPE and that they have denied Darius

of FAPE, and (4) OSSE as the SEA was responsible for directly providing FAPE when DCPS was unable and unwilling to do so, and therefore, denied Darius FAPE. Ex. B (McNeal HOD).

93.     The Hearing Officer concluded that the District was liable for depriving Darius of FAPE and ordered compensatory education to remedy Darius's complete denial of FAPE.

94.     The Hearing Officer denied Darius's systemic claims for violations of the IDEA on behalf of all similarly situated students incarcerated in BOP after concluding that he did not have jurisdiction to resolve systemic claims at an administrative due process hearing.

95.     As of the date of the filing of this Complaint, Darius has not received access to any compensatory education provided for in the HOD. He continues to suffer irreparable educational, psychosocial, emotional, and personal harm from this ongoing deprivation of his education.

**The District of Columbia Does Not Provide FAPE to D.C. Code Offenders**

96.     The District does not provide general education, special education, related services, transition services, or access to a high school diploma for any eligible D.C. Code offender incarcerated in the BOP.

97.     The District does not comply with its procedural obligations under the IDEA for any eligible D.C. Code offender incarcerated in the BOP, including but not limited to convening IEP meetings, developing IEPs, making placement determinations, and evaluating students in all areas of suspected disability.

98.     The District does not provide compensatory education for any eligible D.C. Code offender incarcerated in the BOP or upon their return to the District.

99.     At the administrative due process hearings for Makel and Darius, the District presented evidence by and through its agencies, DCPS and OSSE. The District conceded its obligation to provide FAPE to IDEA-eligible DC students incarcerated in BOP in two separate letters sent to BOP following the *Brown* decision in July 2019, in which DCPS "inquire[d] about

DCPS's ability to ensure a FAPE to individuals with disabilities in BOP facilities" and again after the filing of Makel's administrative due process complaint in June 2023, when OSSE joined DCPS's inquiry.

100.    In the HODs for Makel and Darius, the Hearing Officer explained: "[T]he BOP's at-best disinterest in the rights of children with special needs in the District of Columbia should not and does not provide any legal basis for limiting the rights that Congress established for these children with disabilities." Ex. A (Barnes HOD) at 17; Ex. B (McNeal HOD) at 17.

### BOP Does Not Provide FAPE to D.C. Code Offenders

101.    Under the Revitalization Act, DC Code offenders, including Plaintiffs and other similarly situated students, are under the care and custody of the BOP. *See* Pub. L. 105-33, § 11201(b), 111 Stat. 712 (1997).

102.    The BOP does not have a high school diploma program and does not provide special education and related services in its prison facilities.

103.    The BOP is responsible for the designation of DC Code offenders convicted of felony violations to the location for which the DC Code offender will serve their sentence, "the Bureau of Prisons shall designate the place of the prisoner's imprisonment…." https://www.bop.gov/policy/progstat/5100_008cn.pdf. The BOP is also responsible for determining "the prisoner's programmatic needs" of DC Code offenders. https://www.bop.gov/policy/progstat/5100_008cn.pdf.

104.    The BOP has ultimate decision-making authority over the location where a DC Code offender serves their sentence. The BOP is able to make changes throughout the term of incarceration to a DC Code offender's location of imprisonment, at BOP's discretion. https://www.bop.gov/policy/progstat/5100_008cn.pdf.

105.    On July 19, 2019, DCPS sent a letter to BOP, requesting assistance and cooperation

with providing FAPE to IDEA-eligible DC students incarcerated in the BOP, acknowledging that this Court, in *Brown*, determined that the District has a legal obligation to deliver FAPE to this population of DC students incarcerated in the BOP.

106.    On July 25, 2019, BOP sent a letter in response to the District requesting to schedule a teleconference with the Office of the Attorney General, DCPS counsel, and OSSE counsel to discuss educational programming at BOP. As a result of those discussions, BOP took the position that BOP would not relocate IDEA-eligible District students incarcerated in BOP to one centralized facility where the District can provide services, and that BOP would not provide the District access to IDEA-eligible District students incarcerated in BOP wherever they are currently housed.

107.    On June 27, 2023, DCPS and OSSE again sent a joint letter to BOP requesting assistance and cooperation with providing FAPE to IDEA-eligible District students incarcerated in the BOP, acknowledging both agencies' obligation to provide FAPE to this population of students.

108.    On August 21, 2023, in response to the 2023 letter from the District, BOP stated that District residents in BOP custody are screened by their designated federal facility's Education Department to determine his or her educational needs. BOP's August 21, 2023 letter did not offer or make mention of a high school diploma program, special education or related services, implementation of IEPs, or any reference to the IDEA at all with respect to District residents in BOP custody.

109.    Despite knowing that Plaintiffs and similarly situated students are entitled to special education and related services in accordance with the IDEA, the BOP denied, and continues to deny, Plaintiffs any access to a FAPE without due process.

110.     The BOP did not, and does not, provide any process for Plaintiffs and similarly situated students to access the special education and related services to which they are entitled under the IDEA and District law.

111.     The BOP did not and does not provide any notice to Plaintiffs and similarly situated students of this FAPE deprivation nor any opportunity for Plaintiffs to be heard before denying them access to special education and related services to which they are entitled from the District.

112.     The Hearing Officer found that the District's post-deprivation efforts to engage with the BOP about the Plaintiffs' cases and education were rebuffed or ignored by the BOP. *See* Ex. A (Barnes HOD) at 9-10; Ex. B. (McNeal HOD) at 8-10.

113.     The BOP has not identified security or penological interests that would preclude or make impractical notice to, and the opportunity to be heard by, Plaintiffs or similarly situated students before denying them any and all access to special education and related services to which they are entitled from the District.

114.     BOP denied and continues to deny Plaintiffs and putative class members access to a FAPE without due process, in violation of their IDEA and Fifth Amendment rights.

### Effects of Defendants' Actions and Inactions on Class

115.     The District's failure to provide special education and related services and a high school diploma program to IDEA-eligible students incarcerated as D.C. Code offenders in the BOP means that they have failed to evaluate Plaintiffs and putative class members, conduct IEP meetings for Plaintiffs and putative class members, and failed to implement Plaintiffs' IEPs, and each putative class member's IEP, for the entire length of time they have been in BOP facilities.

116.     The District's failure to provide FAPE has harmed Plaintiffs and putative class members by adversely affecting their educational opportunities, learning, and well-being.

117.     The District's failure to provide the positive behavioral interventions and supports

and other related services that may be required in the putative class members' IEPs exacerbates the pre-existing mental and emotional disorders and traumas prevalent among these students.

118.    The District's actions and inactions denied FAPE from the time that Plaintiffs and putative class members entered, or enter, the BOP, which violates their rights under the IDEA and federal and District implementing regulations.

119.    The BOP's actions and inactions deprive, without due process, Plaintiffs and putative class members of access to the education to which they are entitled under the IDEA, its federal and local implementing regulations, and District law.

120.    The District's denial of Plaintiffs' and putative class members' right to receive the education to which they are entitled while incarcerated in the BOP inhibits their ability to earn a high school diploma and harms their future educational, professional, and personal opportunities upon reentry into the community.

## CLAIMS

## FIRST CAUSE OF ACTION

## VIOLATION OF THE INDIVIDUALS WITH DISABILITIES IN EDUCATION ACT

## (AGAINST DISTRICT OF COLUMBIA)

121.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

122.    The IDEA and its implementing regulations require that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive…." 20 U.S.C. § 1412(a)(1)(A); *see also* 20 U.S.C. § 1400(d)(1)(A); 5-A D.C.M.R. § 3001.1.

123.    In order to provide FAPE, special education and/or related services must be in accordance with each student's IEP. 20 U.S.C. § 1401(9)(D).

124.    DCPS is the LEA responsible for making FAPE available to all District residents with disabilities aged three (3) to twenty-two (22) if they are not enrolled in another LEA. 5-A D.C.M.R. § 3001.2.

125.    OSSE is the SEA and has the obligation to ensure that all LEAs make FAPE available to eligible students with disabilities. *See* 20 U.S.C. § 1412(a)(11)(A); 34 C.F.R. § 300.149(a).

126.    OSSE is responsible for monitoring DCPS's implementation of the IDEA, making annual determinations about their performance on implementing the IDEA, enforcing their compliance with the IDEA, and reporting annually on both DCPS's and OSSE's performance. *See* 34 C.F.R. § 300.600(a)(1). When OSSE identifies an instance of DCPS's noncompliance with the IDEA while exercising these monitoring responsibilities, OSSE must ensure that the noncompliance is corrected as soon as possible and no less than one year after identifying the noncompliance. *See* 34 C.F.R. 300.600(e).

127.    OSSE is required to provide services directly when a LEA "is unable to establish and maintain programs of free appropriate public education" that meet IDEA requirements. 20 U.S.C. § 1413(g)(1)(B).

128.    Plaintiffs and the putative class members are District residents, students with disabilities, and are or were eligible for special education under the IDEA.

129.    Plaintiffs and the putative class members have IEPs that entitle them to special education, related services, and accommodations to make progress toward their educational goals.

130.    DCPS and OSSE have failed, and continue to fail, to implement the IEPs of Plaintiffs and the putative class members.

131.    OSSE has failed, and continues to fail, to monitor DCPS's provision of FAPE to

Plaintiffs and the putative class members.

132.   OSSE has failed, and continues to fail, to correct DCPS's non-compliance with the IDEA with respect to Plaintiffs and the putative class members.

133.   OSSE has failed, and continues to fail, to provide services directly to Plaintiffs and putative class members, despite OSSE's knowledge of DCPS's inability or unwillingness to do so.

134.   DCPS and OSSE have failed, and continue to fail, to ensure that FAPE was made available to Plaintiffs and the putative class members.

135.   Due to the failures of the District's agencies, DCPS and OSSE, the District has denied FAPE to the named Plaintiffs, Makel and Darius, and the putative class members.

136.   The District's actions violate 20 U.S.C. § 1412(a)(1)(A), 20 U.S.C. § 1412(a)(3)(A), 20 U.S.C. § 1415(j), 20 U.S.C. § 1400(d)(1)(A), and the federal and local implementing regulations.

137.   Plaintiffs are entitled to injunctive and declaratory relief and to reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE FIFTH AMENDMENT RIGHT TO DUE PROCESS

## (AGAINST BOP)

138.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

139.   The Fifth Amendment to the U.S. Constitution guarantees that "no person shall be … deprived of life, liberty, or property" by the federal government "without due process of law." U.S. CONST. amend. V. Included within the protection of the Due Process Clause of the Fifth Amendment are the rights to notice and an opportunity to be heard when the government deprives an individual of a liberty or property interest.

140.     The entitlement of Plaintiffs and putative class members to a FAPE is "a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1974).

141.     The "general rule" is "that individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993).

142.     Plaintiffs and the putative class members are IDEA-eligible DC students incarcerated as DC Code offenders in the BOP.

143.     Plaintiffs and the putative class members are entitled to receive high school diploma programming and special education and related services in accordance with the IDEA while they are incarcerated in the BOP.

144.     Plaintiffs and the putative class members have not and are not receiving special education and related services in accordance with the IDEA, and have not and are not receiving high school diploma programming since entering BOP custody.

145.     The BOP has not, and does not, provide high school diploma programming and special education and related services to Plaintiffs and the putative class members.

146.     The BOP has denied, and continues to deny, Plaintiffs and putative class members access to special education and related services to which they are entitled under District law. The BOP's denial has been, and continues to be, systemic, without any notice or opportunity to be heard, prior to the denial of access to high school diploma programming and special education and related services.

147.     The BOP's failure to provide a process to Plaintiffs and putative class members to

receive notice and have an opportunity to be heard before BOP denies them any and all access to high school diploma programming and special education and related services to which they are entitled is not justified by any legitimate interests, including prison or public safety interests.

148.    It was not, and is not, impractical for the BOP to provide due process to Plaintiffs and putative class members before denying them access to high school diploma programming and special education and related services.

149.    As a result of the BOP's actions or inactions, Plaintiffs and the putative class members have been and are currently denied their right to public education and FAPE without due process, including without providing notice and an opportunity to be heard.

150.    The resulting injuries to Plaintiffs and putative class members caused by the BOP's actions or inactions are severe and continuing, due to the "total exclusion" of Plaintiffs and the putative class members "from the educational process" to which they are entitled. *Goss*, 419 U.S. at 576.

151.    Plaintiffs are entitled to injunctive and declaratory relief and to reasonable attorneys' fees and costs.

## RELIEF

Plaintiffs, on behalf of themselves and all other persons similarly situated, request that this Court grant the following relief:

(1)    Hybrid certification of this action, as a class action, pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure;

(2)    A declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure that Defendants have violated the named Plaintiffs' and the putative class members' rights under the following:

(a)    The IDEA, 20 U.S.C. § 1400, *et seq*, namely, 20 U.S.C. § 1412(a)(3)(A),

20 U.S.C. § 1400(d)(1)(A), 20 U.S.C. § 1412(a)(1)(A) and its implementing regulations by failing to provide a free appropriate public education to Plaintiffs and putative class members in accordance with the IDEA and its implementing regulations;

(b)     D.C. Mun. Reg. tit. 5-A, § 3000, *et seq.* by failing to provide a free appropriate public education to Plaintiffs and putative class members; and

(c)     The Fifth Amendment to the U.S. Constitution's due process clause by depriving Plaintiffs and putative class members of their property interest in their education, and failing to provide Plaintiffs and putative class members of notice and an opportunity to be heard with respect to that deprivation.

(3)     A permanent injunction with the following requirements:

(a)     Order the District to provide special education and related services in conformity with the IEP of each Plaintiff and putative class member;

(b)     Order the District to authorize comprehensive independent education evaluations for Plaintiffs and putative class members; and

(c)     Order that Defendant BOP place students in a facility where Defendant District of Columbia can implement their IEPs, including the provision of all special education instruction, related services and accommodations, and provide access to a high school diploma program through each putative class member's period of IDEA eligibility, including any extended eligibility that this Court may order; and

(d)     Order the BOP to stop denying Plaintiffs and class members their IDEA rights without notice and an opportunity to heard;

(4)     An Order requiring the District to provide compensatory education to Plaintiffs and class members including, but not limited to, extending Plaintiffs' and putative class members' IDEA eligibility to allow them the opportunity to complete their secondary education;

(5)     Order that this Court appoint a monitor to oversee compliance with the IDEA and any orders of this Court;

(6)     Order that Defendants report data on a regular basis related to their compliance with the IDEA and any orders of this Court;

(7)     Retention of jurisdiction over this action to ensure Defendants' compliance with the mandates of the Court's orders;

(8)     An order requiring Defendant to reimburse Plaintiffs for the funds expended to obtain experts, evaluations, and special education and related services as a result of Defendant's Defendants' violations of law pursuant to 5-A D.C.M.R. § 3054;

(9)     An award of reasonable attorneys' fees, expenses, and costs pursuant to 20 U.S.C. § 1415(i)(3)(B) and 29 U.S.C. § 794a(b); and

(10)     Such other relief as may be deemed proper by the Court.

Dated: April 1, 2024                    Respectfully submitted,

                                        /s/Brian J. Whittaker
                                        Brian Whittaker, DC Bar No. 997952
                                        Martha Medina, DC Bar No. 1719416
                                        Nixon Peabody LLP
                                        799 9th Street NW, Suite 500
                                        Washington, DC 20001-5327
                                        202-585-8000
                                        bwhittaker@nixonpeabody.com
                                        mmedina@nixonpeabody.com


                                        /s/ Ifetayo Belle
                                        Ifetayo Belle, DC Bar No. 1601686
                                        School Justice Project
                                        1111 14th Street NW, Suite 500
                                        Washington, D.C. 20005
                                        (202) 494-5388 (cell)
                                        tbelle@sjpdc.org

                                        /s/ Kaitlin Banner
                                        Kaitlin Banner, DC Bar No. 1000436
                                        Margaret Hart, DC Bar No. 1030528
                                        Marja K. Plater, DC Bar No. 90002586
                                        Washington Lawyers' Committee for Civil
                                        Rights and Urban Affairs
                                        700 14th Street, NW, Suite 400
                                        Washington, DC 20005
                                        202-319-1000
                                        kaitlin_banner@washlaw.org
                                        margaret_hart@washlaw.org
                                        marja_plater@washlaw.org