UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAKEL BARNES, *et al.*,<br><br>    *Plaintiffs,*<br><br>v.<br><br>THE DISTRICT OF COLUMBIA, *et al.*,<br><br>    *Defendants*. | Case No. 1:24-cv-00750-RCL |

**MEMORANDUM OPINION**

Plaintiffs, who are currently incarcerated in Bureau of Prisons ("BOP") facilities serving sentences for D.C. Code felony convictions, allege that Defendants BOP and the District of Columbia have denied them special education services in violation of the Individuals with Disabilities in Education Act ("the IDEA") and the Due Process Clause. Before the Court is Plaintiffs' Motion to Clarify the Appointment of Class Counsel, Mot. to Clarify, ECF No. 60 ("Mot."), through which they ask the Court whether only the School Justice Project ("SJP") may serve as class counsel in this case, or whether the Washington Lawyers' Committee for Civil Rights and Urban Affairs ("the Committee") and Nixon Peabody LLC ("Nixon Peabody") may represent class members too. BOP has taken no position on the motion, but the District opposes it. The motion will be **GRANTED IN PART** to the extent it seeks an order formally appointing SJP as class counsel and permitting the Committee and Nixon Peabody to assist class counsel in the manner set forth herein, and **DENIED IN PART** insofar as it seeks appointment of the Committee and Nixon Peabody as class co-counsel.

**I.   BACKGROUND**

The Court has previously recounted the facts underlying this dispute. *See Barnes v. District of Columbia*, No. 24-cv-00750-RCL, 2025 WL 947684, at *1–5 (D.D.C. Mar. 28, 2025). The

1

Court will therefore presume familiarity with the historical circumstances of the case and restate only the essentials.

Under the IDEA, states and the District of Columbia must provide a free appropriate public education ("FAPE") to "all children with disabilities" until "their twenty-first birthday." 20 U.S.C. §§ 1400(d)(1)(A), 1412(a). District of Columbia regulations broaden eligibility for D.C. residents through the end of the school year in which a child turns twenty-two. D.C. Mun. Regs. tit. 5-A. § 3001.4 (2022). Federal regulations require "[s]tate and local juvenile and adult correctional facilities" to comply with the IDEA. 34 C.F.R. § 300.2(b)(1)(i), (ii), (iv).

The IDEA also requires state agencies to provide administrative hearings for complainants alleging violations of the statute. 20 U.S.C. § 1415(a); *see also Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988) (explaining that hearings must allow representation by counsel, confrontation and cross-examination, and compulsory process for the attendance of witnesses). A hearing officer must determine "whether the child has received a free appropriate public education." 20 U.S.C. § 1415(f)(3)(E)(i). If the hearing officer finds that the child has not, then the officer enjoys "broad discretion to fashion an appropriate remedy," *B.D. v. District of Columbia*, 817 F.3d 792, 798 (D.C. Cir. 2016). Persons aggrieved by the hearing officer's determination or remedy may seek administrative review, *see* 20 U.S.C. § 1415(g), and subsequently may file a civil action "in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." *Id.* § 1415(i)(2)(A).

In this case, Class Representatives Makel Barnes and Darius McNeal were committed to BOP custody for D.C. Code felonies at the ages of nineteen and eighteen years old, respectively. Compl. ¶¶ 52, 78. Prior to their incarceration, each was a student within the D.C. Public Schools

("DCPS") system and was determined by DCPS to qualify for specialized instruction and behavioral support services. *Id.* ¶¶ 45–47, 50, 71, 75–76.

On February 21, 2023, Plaintiffs filed administrative complaints alleging that the District and BOP were each denying them a FAPE while incarcerated. *See id.* ¶¶ 12; *id.* Ex. A at 11, ECF No. 5-1 ("Barnes HOD"); *id.* Ex. B. at 11, ECF No. 5-2 ("McNeal HOD"). They each sought extended IDEA eligibility, compensatory services, and a transfer to a D.C. correctional facility. *See* Barnes HOD at 23; McNeal HOD at 25. The hearing officer provided much of the requested relief in determinations issued on December 15, 2023. Specifically, the officer granted the request for compensatory services but concluded that he lacked authority to extend IDEA eligibility or order a facility transfer. *E.g.*, Barnes HOD at 8–27.

Plaintiffs brought this lawsuit in March 2024 based on the hearing officer's denial of the latter relief. Plaintiffs moved for class certification in June 2024. *See* Mot. for Class Cert., ECF No. 22. In August 2024, the District and BOP filed separate motions to dismiss the plaintiffs' claims. D.C. Mot. to Dismiss, ECF No. 31; BOP Mot.to Dismiss, ECF No. 30. After full briefing, the Court denied the motions to dismiss with respect to alleged violations of § 1412(a)(1)(A) of the IDEA and the Due Process Clause of the Fifth Amendment, and otherwise granted the motions. Order of Mar. 28, 2025 at 2, ECF No. 54. The Court also certified the following class:

> All District residents between the ages of eighteen (18) and twenty-four (24) who: (1) are incarcerated in the BOP as D.C. Code offenders and are currently entitled to receive special education and/or related services pursuant to the IDEA and its federal and local implementing regulations and District law; (2) are or were incarcerated in the BOP as D.C. Code offenders and were entitled to receive special education and/or related services pursuant to the IDEA and its federal and local implementing regulations and District law, but have since aged out of eligibility; or (3) will be incarcerated in the BOP as D.C. Code offenders and were entitled to receive special education and/or related services pursuant to the IDEA and its federal and local implementing regulations and

3

> District law, and do not, did not, or will not, receive special education and/or related services pursuant to the IDEA and its federal and local implementing regulations and District law while incarcerated in the BOP.

*Id.* at 1.

In the Court's analysis of the adequacy of proposed representation in the accompanying Memorandum Opinion, the Court reviewed the pending applications for appointment of class counsel. SJP, the Committee, and Nixon Peabody collectively applied for appointment as class counsel. The Court acknowledged that, per their uncontested declarations, all three entities "ha[d] invested heavily" in pre-litigation research; had collectively filed the pleadings, then-pending motions, and related briefing; and had promised to allocate "the financial resources necessary to pursue th[e] litigation through its completion." *Barnes*, 2025 WL 947684, at *20. The Court ultimately concluded, though, that because SJP "was counsel for plaintiffs in the *Brown* litigation cited approvingly by the hearing officer," that entity was "the best applicant to sustain this action on behalf of all plaintiffs." *Id.* The Court specified in the Memorandum Opinion that it would "therefore appoint" SJP "as class counsel," *id.*, though it did not specifically provide for such appointment in the accompanying order, *see generally* Order of Mar. 28, 2025.

On May 7, 2025, Barnes and McNeal moved for clarification of the Court's appointment of class counsel, contending that "the Court did not formally appoint class counsel, either SJP or all three Plaintiff's counsel, in its Order certifying the class." Mot. at 2. They "request a further order from this Court appointing class counsel and clarifying that SJP, Nixon Peabody, and the Committee are appointed under Rule 23(g) as class counsel." *Id.* The District opposed on May 21, 2025, *see* Mem. in Opp., ECF No. 62, and Barnes and McNeal replied on May 28, 2025, *see* Reply, ECF No. 63. The motion is now ripe.

4

## II. LEGAL STANDARDS

### A. Motion for Clarification

Although "a motion for clarification is not a formal creature of civil procedure," district courts "permit parties to tender motions that beseech the court to explain or clarify something ambiguous or vague about a ruling." *All. Of Artists & Recording Cos. v. GM Co.*, 306 F. Supp. 3d 413, 418 (D.D.C. 2016) (quotations and citation omitted). Indeed, litigants "are encouraged 'to file motions for clarification when they are uncertain about the scope of a ruling.'" *Steele v. United States*, No. 1:14-cv-1523-RCL, 2023 WL 6215790, at *5 (D.D.C. Sept. 25, 2023) (quoting *United States v. All Assets Held at Bank Julius, Baer & Co.*, 315 F. Supp. 3d 90, 99 (D.D.C. 2018)).

### B. Motion for Reconsideration Under Rule 54(b)

"A motion for reconsideration, not a motion for clarification, is proper when 'a party seeks to alter or modify the result, rather than merely to grasp its meaning or scope in the face of an actual and material ambiguity.'" *Id.* (quoting *Sai v. Transp. Sec. Admin.*, No. 14-cv-403-RDM, 2015 WL 13889866, at *3 (D.D.C. 2015)). District courts may reconsider interlocutory orders under Rule 54(b) "as justice requires." *Lin v. District of Columbia*, 47 F.4th 828, 838–39 (D.C. Cir. 2022). This standard confers broad discretion, reflecting a district court's "inherent power" to revise non-final orders. *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011); *see also id.* ("[T]he district judge is in the best position to assess whether or not 'justice requires' [reconsideration]." (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22-23 (1st Cir. 1985) (Breyer, J.)). Reconsideration may be appropriate "when the nonmovant demonstrates an intervening change in the law; the discovery of new evidence not previously available; or a clear error in the first order." *Lucas v. District of Columbia*, 214 F. Supp. 3d 1, 5 (D.D.C. 2016).

5

## III.     ANALYSIS

### a. Proper Legal Standard

Plaintiffs and the District dispute whether the instant motion requests clarification or reconsideration. Although the parties largely talk past one another, the Court must briefly address the correct legal standard before turning to the merits of the motion.

In the District's view, the Motion "asks the Court to alter or modify" its March 28 Opinion by including the Committee and Nixon Peabody as joint class co-counsel, which requires the Court to consider the motion under the umbrella of Rule 54(b) reconsideration. Plaintiffs offer two responses. First, they note that Rule 23 allows district courts to "make further orders in connection with the appointment" of class counsel, *see* Fed. R. Civ. P. 23(g)(1)(E), including to "change or replace class counsel." Reply at 2. Second, they contend that because the Court "did not formally appoint class counsel . . . in its order certifying the class," the Court has "no decision to reconsider," so the motion should be considered as a motion to clarify. *Id.*

Plaintiffs' motion is properly classified as a motion to reconsider because it "seeks to alter or modify the result, rather than merely to grasp its meaning or scope in the face of an actual and material ambiguity." *Steele*, 2023 WL 6215790, at *5 (citation omitted). The Court's Memorandum Opinion was crystal clear that only SJP would be appointed as class counsel, and Plaintiffs now ask the Court to amend not only the March 28 Order, but the Memorandum Opinion. Indeed, Plaintiffs make no suggestion that the Memorandum Opinion suffered from "ambiguity" as to the appointment of SJP. *Steele*, 2023 WL 6215790, at *5. Rather, they seek to hook their coats on the March 28 Order's lack of specific language implementing the Memorandum Opinion's discussion of the appointment of SJP as class counsel. It is simply not the case, however, that such an omission means that the Court has "no decision to reconsider," Reply at 2, because reconsideration is not limited to formal orders. The plain language of Rule 54(b) allows courts to

revise "any order *or other decision*, however designated," so long as the order is interlocutory in nature.  Fed. R. Civ. P. 54(b).

If Plaintiffs had merely asked the Court to confirm that SJP was authorized to begin serving as class counsel despite the lack of a formal order on the issue,[1] then perhaps the Motion would properly be construed as a motion for clarification.  Instead, Plaintiffs invite the Court to "alter or modify the result" of that ruling.  *Steele*, 2023 WL 6215790, at *5.  Such a request fits comfortably within the domain of Rule 54(b).  With the proper legal standard in view, the Court now turns to the merits of Plaintiffs' request.

### b. The Court declines to reconsider the appointment of SJP as class counsel.

Plaintiffs present two grounds on which the Court should reconsider its appointment of only SJP as class counsel, and instead appoint SJP, the Committee, and Nixon Peabody jointly.  Each argument, however, was already presented to the Court in the briefing on class certification and addressed by the Court in its ruling.

Plaintiffs first assert that the three entities "were not, and are not, competing to be class counsel."  Mot. at 3.  The Court, however, was well aware of this fact at the time of the Memorandum Opinion, acknowledging that the three entities had "collectively applied for appointment."  *Barnes*, 2025 WL 947684, at *20.  While "[t]here is no question that the appointment of multiple counsel may at times promote the effective management of class action litigation, . . . appointment of multiple class counsel can fail to serve the interests of the class" too.  *Cf. In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 230 (D.D.C. 1999) (discussing class counsel appointments under PSLRA).  In this case, the Court assessed that serving the best interests of the

---

[1] Indeed, according to Plaintiffs, the District indicated to Plaintiffs during a conference that it would not oppose a motion for clarification limited to this ground.  Mot. at 2–3.

class called for giving final decision-making authority on strategic matters to the single entity with the critically relevant experience.

Second, Plaintiffs contend that the Court misapprehended Rule 23(g)(1) as only allowing the appointment of a single entity as class counsel. Mot. at 4. It is well understood, both generally and by this Court, that courts may appoint "an individual attorney," "an entire firm," or even "numerous attorneys who are not otherwise affiliated but are collaborating on the action" as class co-counsel. Fed. R. Civ. P. 23(g)(2) advisory committee's notes to 2003 amendment. Yet, as explained in the Memorandum Opinion, the authority to appoint co-counsel is tempered by the duty to "appoint the applicant best able to represent the interests of the class." *Barnes*, 2025 WL 947684, at *20 (quoting Fed. R. Civ. P. 23(g)(2)). In the Court's view, SJP was and is "the best applicant to sustain this action on behalf of all plaintiffs" based on its unique experience as "counsel for plaintiffs in the *Brown* litigation cited approvingly by the hearing officer." *Id.* The Court was well aware that it could have appointed co-counsel; it concluded that, simply put, the qualifications of the SJP beat those of its proposed peers and having a single entity serve as class counsel allows for more expeditious decision-making on behalf of the class. Because a motion for reconsideration is not "an opportunity to reargue facts and theories upon which a court has already ruled," *Hassanshahi*, 145 F. Supp. 3d at 75, neither of these presents a ground for reconsideration.

That said, the Court is persuaded that allowing the Committee and Nixon Peabody to assist SJP in this litigation, albeit not as co-counsel, would substantially benefit the interests of the class. Plaintiffs correctly point out that courts may "make further orders in connection with the appointment" of class counsel. Fed. R. Civ. P. 23(g)(1)(E). Moreover, Courts often allow class counsel to solicit or otherwise obtain assistance from other attorneys to assist with the representation of the class. *See, e.g.*, *Pigford v. Veneman*, 182 F. Supp. 3d 53, 56 (D.D.C. 2002);

8

*In re Zyprex Prod. Liab. Litig.*, 253 F.R.D. 69, 210 (E.D.N.Y. 2008) (Weinstein, J.) ("Co-lead class counsel may, as they have to date, associate other lawyers and firms to provide services for the Class.") *rev'd sub nom. on other grounds* 620 F.3d 121 (2d Cir. 2010). Here, permitting the Committee and Nixon Peabody to assist SJP, as necessary, is likely to facilitate the expeditious resolution of this case. Consequently, the Court will allow the Committee and Nixon Peabody to support SJP as class counsel, including by (a) participating in the discovery process by making or receiving requests and information on behalf of SJP and the class, (b) communicating with potential members of the class, (c) assisting with the drafting of pleadings, motions, memoranda, and other documents, (d) appearing and arguing on behalf of the class in future proceedings before the court, and (e) seeking reasonable attorneys' fees and costs that may be awarded by the Court at a future date. Plaintiffs and their counsel should be advised, however, that should the parties seek such an award, the Court plans to carefully review all billing in this case to screen for duplicated or otherwise frivolous efforts. Fee awards will be granted only to the extent that counsel shows that the underlying work is reasonable in scope and advances the interests of the class.

## IV.   CONCLUSION

For the foregoing reasons, the motion will be **GRANTED IN PART** to the extent it seeks an order formally appointing SJP as class counsel and permitting the Committee and Nixon Peabody to assist class counsel in the manner set forth herein, and **DENIED IN PART** insofar as it seeks appointment of the Committee and Nixon Peabody as class co-counsel.

An order will follow.

Date: July 24, 2025

Royce C. Lamberth
United States District Judge

9